UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

L.S. OWENS O/B/O
JUWON M. OWENS,

    Plaintiff.

v.                                        Civil Action:
                                          2:09-cv-1026-IPJ

MICHAEL J. ASTRUE,
Commissioner, United States
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs submitted by the parties. The court has jurisdiction pursuant to 42 U.S.C. § 405. Plaintiff L.S. Owens o/b/o J.M. Owens ("J.M.O.") seeks reversal and remand of the final decision of the Commissioner. All administrative remedies have been exhausted.

Plaintiff filed an application for Supplemental Social Security Income, asserting that he suffers from asthma to such an extent that it is disabling. (R. 26). His applications for benefits were denied initially and again by an Administrative Law Judge ("ALJ") on September 8, 2008. (R. 26-27, 15-24). Because the Appeals Council denied plaintiff's request for review, the ALJ's determination

1

became the final decision of the Commissioner of Social Security.  (R. 4-6).

The only function of this court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied.  *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)).  Substantial evidence is "evidence that must do more than create a suspicion of the existence of the fact to be established . . . and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

The determination of whether a child is disabled hinges on the three-step evaluation required by federal regulations.  The ALJ must consider whether the child is engaging in substantial gainful activity, whether the child suffers from a severe impairment or combination of impairments that is severe, and whether the child's impairment or combination of impairments meets, medically equals, or functionally equals one of the listed impairments.  20 C.F.R. § 416.924 (2009).  20 C.F.R. Pt. 404 Subpart P, App. 1, § 103.03 addresses childhood asthma and provides several methods for a claimant to demonstrate disabling asthma.

J.M.O. is a nine year old male whose medical record reveals pulmonary health issues concerning asthma reaching back several years.  Plaintiff was seen at the Children's Health Center on January 26, 2005, and was assessed with having

wheezing, vomiting, and tachycardia. At the time, plaintiff was taking Albuterol. He was discharged with clear breath sounds and no increased work of breathing. (R. 96-98). Just more than one year later, on January 27, 2006, plaintiff went to Children's Hospital of Alabama with a fever of 102F, congestion, and rhinorrhea. He was treated with ibuprofen, and the doctor reiterated the importance of daily use of Flonase and also prescribed Singulair. (R. 255).

On March 5, 2006, plaintiff went to the hospital for coughing, wheezing, and a fever. He was diagnosed with moderate tachycardia and moderate tachypnea and treated with Albuterol via nebulizer. A chest x-ray revealed an "appearance consistent with reactive airways disease and/or bronchiolitis." (R. 218-221). On March 19, 2006, plaintiff had a "5 Year Well Child Visit," during which it was noted he was recently in the ER for wheezing. He had improved with his medication – which, at that time, included Albuterol, Singulair, Flovent, Flonase, and Lodrane – and he was assessed with having seasonal allergies and constipation. (R. 254).

About one month later, on April 17, 2006, plaintiff arrived at Children's Health System complaining of chest pain. He was diagnosed with moderate tachycardia, moderate tachypnea, moderate elevation of systolic pressure, and borderline low body temperature, and he was treated with Albuterol via nebulizer. (R. 207-209). Three days later, on April 20, 2006, plaintiff went to Children's

Hospital of Alabama complaining of hand swelling, coughing that had lasted 4 days, a sore throat, eczema, and allergies. A strep test was positive and the physician predicted an insect bite caused the hand swelling. At the time, plaintiff was taking Singulair, Lodrane, Albuterol, Flovent twice daily, and Flonase. (R. 253).

On May 12, 2006, plaintiff reported to the hospital with coughing and wheezing. He was treated with Albuterol via nebulizer, Atrovent, and Prednisone and was discharged the same day. (R. 199-202). Five days later, on May 17, 2006, plaintiff returned to the hospital with an upper respiratory infection, coughing, and wheezing. The physician recommended plaintiff continue his use of Albuterol, Singulair, and Flonase and increased his use of Flovent. (R. 252).

From October 9, 2006, to October 11, 2006, plaintiff was admitted to Children's Hospital after a two day history of cough, wheezing, and chest pain. He vomited eight times, two of which were in the ER, and some of which were post-tussive. He received three long nebulization treatments and a dose of oral Prednisolone. He was placed on Albuterol every two hours before having it spaced to every three hours. He was given Atrovent every six hours, Flovent 110 twice each day, OraPred, Flonase, Claritin, and Singulair. (R. 183-184) Several days after his discharge, plaintiff went back to the hospital for the flu and nighttime cough on October 16, 2006. Plaintiff was told to continue his asthma

medication and was given a flu shot. (R. 250).

On January 22, 2007, plaintiff was seen at the hospital again for night coughing. The attending physician noted that "compliance with medication and spaces does not appear to be an issue," and plaintiff was taking Singulair every night, Claritin, Flonase, Albuterol as needed, Flovent twice daily, and Miralax. The physician noted plaintiff had moderate persistent asthma and that mainly nighttime coughing and wheezing were the problems. Plaintiff's medication was changed from Flovent to Advair. (R. 249). Plaintiff was seen on January 26, 2007, for an upper respiratory infection, yellow drainage, and his eyes being matted together. It is noted that his past medical history includes asthma poorly controlled, allergies, and constipation, and the medication he was taking included Albuterol, Singulair, Advair, Flonase, Claritin, and Miralax. Plaintiff received Vigamox for his conjunctivitis and a new murmur was discovered. Plaintiff's medical record states that he will be referred to a cardiologist and a pulmonologist, and that he should follow up on his asthma in three to four weeks. (R. 248).

Plaintiff's medical records of a visit to the Asthma Clinic on February 2, 2007 notes that plaintiff's asthma is "doing better" since being started on Advair on January 22. Nevertheless, his symptoms included itchy and watery eyes, a runny nose, sinus tenderness and pressure, coughing, wheezing, pneumonia, and chest tightness. In addition to taking Advair twice daily at the time, plaintiff was taking

Fluticasone spray daily, Singulair at bedtime, Loratadine daily, and Albuterol as needed. He was diagnosed with moderate persistent asthma, and he was prescribed an air compressor/nebulizer and told to stay on his current medicine regimen. (R. 174-179). Five days later on February 7, 2007, plaintiff went to Children's Health System at 5:40 p.m. complaining of fever and vomiting. Plaintiff's medical records indicate he was taking Albuterol, Flovent twice daily, Singulair each evening, and ibuprofen. (R. 166-169). On February 27, 2007, plaintiff visited the hospital for flu of moderate persistent asthma. The physician noted that plaintiff's heart was racing, but he was not wheezing and had no trouble breathing. The attending physician recommended a thirty day trial period of Benadryl, and if that treatment were to fail, Zyrtec would be prescribed. (R. 247).

During plaintiff's "6-7 Year Well Child Visit" on April 10, 2007, it was noted that plaintiff's asthma was doing well while he was on Advair, Singulair, Claritin, Flonase, Albuterol, and Miralax. (R. 246). On June 1, 2007, at the Asthma Clinic, it was noted that plaintiff was "doing pretty well." Plaintiff was told to continue the same plan, which included use of Advair daily, Singulair each night, Claritin daily, Flonase each night, Miralax as needed, and Patanol as needed. He also recommended Albuterol before outdoor play. (R. 139-142). Less than a week later, on June 6, 2007, plaintiff arrived at the hospital complaining of fever, frequent episodes of wheezing, and intermittent episodes of unproductive, painful

coughing, which the physician described as mild, at the time. The physician diagnosed acute bronchospasm. Plaintiff was treated with ibuprofen, Albuterol via nebulizer, and Prednisolone. He was told to continue the Albuterol treatments at home. (R. 128-132). On June 8, 2007, plaintiff came to the hospital for a follow-up, and it was noted he was much improved though he was still coughing. He was advised to finish his five day course of Prednisone. (R. 244).

On August 24, 2007, plaintiff went to the hospital for a fever, hard stool, bed wetting, and watery urine, (R. 242), and on September 5, 2007, he reported having a rash on the trunk of his body. (R. 241). At the time of his August 2007 visit, plaintiff was taking Advair, Claritin, Benadryl, Flonase, Singulair, Albuterol, and Miralax, while he was on Flonase, Singulair, Advair, Allegra, and Miralax during his September 2007 visit. On November 16, 2007, plaintiff had a follow-up regarding his visit to the Asthma Clinic on June 1, 2007, at the UAB School of Medicine. Plaintiff had an increased cough for approximately one week that his mother believed was caused by the changing weather. The nurse practitioner noted complaints of "coughing 3 nights per week and . . . having daytime symptoms 3 days per week of coughing, wheezing and chest tightness. At the time, he was taking Advair twice daily, Singulair at night, Claritin daily, Patanol as needed, and Miralax as needed. The nurse practitioner at UAB stated that plaintiff suffered from moderate persistent asthma. (R. 295-296).

Plaintiff visited the hospital five times in January of 2008.  On January 4, 2008, plaintiff was seen at the hospital for left ear pain, coughing, and congestion.  He had no fever and had no difficulty breathing.  He was told to continue Albuterol treatment, and the physician noted there were no signs of asthma exacerbation.  In addition to Albuterol, plaintiff was taking Advair, Flonase, Allegra, and Singulair at the time of his visit.  (R. 239).  Two days later, on January 6, 2008, plaintiff went to the hospital complaining of coughing, runny nose, wheezing, decreased appetite, and decreased fluid intake.  During the exam, the physician noted dry unproductive coughing and scattered wheezing.  Plaintiff was given Albuterol via nebulizer and Orapred, and was discharged with instructions that he could resume all normal activity.  He was taking the same medication he had been taking two days earlier.  (R. 286-290).

The next day, on January 7, 2008, plaintiff returned because he was still coughing, wheezing, and had difficulty breathing during the evening of January 6 and morning of January 7.  He was treated with Albuterol via nebulizer and a chest x-ray was done.  The physician noted that the x-ray was "ordered only because mom is demanding CXR although patient has perfect 02 saturations[,] is currently playing video games and eating chips and in no respiratory distress."  Plaintiff was still taking the same five medications he had been taking during his visits on January 4 and 6, and the physician also noted plaintiff was on a five day course of

Orapred.  (R. 272-277, 322).

      Three days later on January 10, 2008, plaintiff reported coughing and congestion lasting, at that point, one and one-half weeks.  Since that time, he had been using nebulizer treatments every four hours.  The physician recommended plaintiff continue the Albuterol as needed for the coughing and wheezing and that he continue use of Advair, Singulair, Flonase, and Allegra.  He encouraged increasing the Albuterol use when upper respiratory infection symptoms appear.  (R. 238).  The next day, on January 11, 2008, plaintiff had a follow-up appointment with a nurse practitioner at UAB's Primary Care Clinic.  The nurse practitioner reviewed plaintiff's recent January 2008 history and stated, "Our impression today is moderate persistent asthma not well controlled."  She noted plaintiff had missed seven days of school in November and was currently medicated with Advair twice daily, Singulair nightly, Allegra daily, Flonase nightly, and Patanol as needed.  A steroid burst had been completed the day prior. (R. 262-263).

      On February 22, 2008, plaintiff had another follow-up appointment at UAB's Primary Care Clinic.  That day, he had no complaints and his mother reported that he was doing well with a rare cough.  He had daytime symptoms less than two times per week, and night time awakenings occurred less than twice monthly.  He was using Albuterol, Singulair daily, Flonase daily, Patanol daily as needed, and Miralax.  The certified nurse practitioner's assessment was that he had moderate

persistent asthma.  (R. 258-259).

Plaintiff, through his mother, applied for Supplemental Social Security Income on November 16, 2005.  (R. 26).  A disability evaluation performed by Amanda D. Soong, M.D. on January 13, 2006, notes that plaintiff, who was five years old at the time, had "mild intermittent asthma, seasonal allergies, and constipation" and that he had a normal lung exam during his last exam.  It was noted that if he were to take his medication as needed, his prognosis was good.  If his asthma is well controlled, "the patient's function should be similar to other children his age, perhaps with mild limitation of exercise."  (R. 101).

During plaintiff's consultative evaluation on January 2, 2008, Dr. Herman Moreno made the follow assessments: allergic rhinitis due to pollen and mild intermittent asthma.  Dr. Moreno noted plaintiff's present medical history included nasal discharge, sneezing, cough, and wheezing, but noted no wheezing was heard; no rhonchi were heard, and no decrease in breath sounds were heard.  Dr. Moreno concluded that his asthma had improved since the last evaluation.  (R. 232-234)

The ALJ found that the child was not engaged in substantial gainful activity, but that he did have a severe impairment of persistent moderate asthma.  However, the ALJ concluded that the child's impairment did not meet or medically equal the severity of the impairment listed in 20 C.F.R. Pt. 404 Subpart P, App. 1.  (R. 23).  In making this decision, the ALJ found

>the claimant's FEV1 is not equal to or less than the value specified in table I of 103.02A; he has not suffered 6 or more attacks in spite of prescribed treatment during any period of 12 consecutive months; and, his medical records do not show persistent low-grade wheezing between acute attacks or an absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetric bronchodilators.

(R. 18-19 citing 20 C.F.R. Pt. 404 Subpart P, App. 1, § 103.03 ). Accordingly, the ALJ examined whether plaintiff had an impairment or combination of impairments that functionally equaled one of the listings and satisfies the 12-month duration requirement, ultimately finding that plaintiff had no such impairment or combination of impairments.

Plaintiff argues that asthma attacks requiring physician intervention occurred on March 5, 2006, April 17, 2006, May 12, 2006, October 9, 2006, and February 7, 2007. Because the October 2006 hospitalization lasted for three days, it counts as two attacks pursuant to § 103.03B, and plaintiff argues that these six attacks occurred within one year, satisfying the requirements for a finding of disability based on asthma. This court agrees.

Federal regulations addressing childhood asthma require plaintiff to show he

suffers from asthma attacks that require physician intervention despite treatment. Such attacks must occur every two months or at least six times each year. 20 C.F.R. Pt. 404 Subpt. P, App. 1, § 103.03. Attacks are "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment." *Id.* § 3.00C.

    The record is replete with more than two dozen visits to Children's Health Hospital or one of the hospital's clinics for asthma-related symptoms between 2005 and early 2008, when the plaintiff was between five and eight years of age. Five of those visits–those occurring March 5, 2006, April 17, 2006, May 12, 2006, October 9, 2006,[1] and February 2, 2007–took place within one year of each other. Because the hospital admission on October 9, 2006, to control plaintiff's asthma lasted for longer than 24 hours, it counts as two attacks, bringing the total number of hospitalizations for plaintiff's asthma attacks within one year to six. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.03. During those visits, plaintiff received intensive treatment for symptoms of coughing, wheezing, chest tightness or chest pain, itchy or watery eyes, runny nose, snoring, sinus tenderness and pressure, heart murmur, fever, and general asthma symptoms.

    Given the above evidence, which was before the ALJ, the court finds the ALJ's opinion that the plaintiff had not suffered six or more attacks in spite of

---

[1]Plaintiff was admitted to Children's Health Hospital on October 9, 2006 and was discharged on October 11, 2006.

prescribed treatment during any period of twelve consecutive months was against the substantial weight of the evidence. The court finds that the plaintiff has suffered six or more attacks in spite of prescribed treatment during a twelve month period. Therefore, the court finds that the plaintiff is entitled to a finding of disability.

## Conclusion

Based upon a consideration of all of the evidence, the court finds that the decision of the ALJ was not supported by substantial evidence. Therefore, the court **REVERSES** the determination of the ALJ and **REMANDS** this case to the Commissioner to calculate the plaintiff's benefits. The court shall so rule by separate order.

**DONE** and **ORDERED**, this 28th day of January 2010.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE